STATE of Iowa, Appellee,

v.

Michael (NMN) SHANE a/k/a John Doe, Appellant.

No. 59420.

Supreme Court of Iowa.

June 29, 1977.

Kjas T. Long, Waterloo, for appellant.

Richard C. Turner, Atty. Gen., David H. Correll, County Atty., for appellee.

Heard before MOORE, C. J., and RAWL-INGS, LeGRAND, REYNOLDSON and McCORMICK, JJ.

LeGRAND, Justice.

On December 16, 1975, the Hollendale Grocery Store in Waterloo was robbed by two armed men. They obtained approximately $150 in cash, put the store manager and several customers in a walk-in cooler, and made good their escape. Defendant Michael Shane and his half brother, Raymond Smith, were apprehended the next day and charged with the crime of robbery with aggravation in violation of § 711.2, The Code, 1975.

We are here concerned only with Michael Shane's trial. He was convicted and sentenced to be imprisoned in the penitentiary as provided in § 711.2.

Defendant's appeal raises only one issue. He asserts several guns taken in a search of a motel room at the time of his arrest were illegally seized in violation of his 4th Amendment rights. He challenged this by a motion to suppress prior to trial. The motion was overruled, and the weapons were later used by the State in defendant's trial.

The Waterloo Police Department undertook an investigation of this robbery shortly after it occurred. They received information that one of the parties involved was Raymond Smith. They also ascertained that Raymond Smith was living in Cedar Rapids, Iowa, with a young lady by the name of Christy York. At that time the identity of Smith's accomplice was unknown.

Armed with an arrest warrant for Raymond Smith, several Waterloo detectives went to Cedar Rapids the day following the robbery. They were accompanied by Bud Welch, the manager of the Hollendale Grocery Store, who had been in charge of the store when the robbery occurred. In Cedar Rapids they enlisted the aid of several other detectives. They also obtained a search warrant to permit a search of the apartment allegedly occupied by Raymond Smith and Christy York.

Arriving at the York apartment, the police executed the search warrant. A search of the premises revealed several incriminating items, none of which is material to this inquiry. The arrest warrant was not served because Smith could not be found. However, the officers obtained information from Miss York that he was at a motel in Marion, Iowa.

The officers, again accompanied by Mr. Welch, descended on this motel. They determined which room Smith was occupying and then stationed themselves strategically where it could be kept under surveillance.

When the police first approached the motel, the room the suspects occupied was dimly lit. It seemed to be such light as might come from a television set. The officers noticed someone peering out the window. The lights were then extinguished. The police knocked on the motel room door, identified themselves, and demanded admittance. There was no answer. They repeated the procedure but again got no response. Meanwhile there was loud noise inside the room. There is some suggestion in the evidence that this was occasioned by the men attempting to escape. After a period estimated at three or four minutes, the door was opened a few inches. Several officers pushed their way in. At this time, the room was lighted.

There were two men in the room. One was Raymond Smith; the other Michael Shane. When the police first entered the room, Michael Shane was kneeling alongside one of the beds and seemed to be placing something underneath the mattress.

From here on, things happened quickly. Both men were handcuffed and placed under arrest. Mr. Welch immediately came into the room and identified both of the men as those who had robbed him the night before. A search of the room disclosed the presence of two guns underneath the mattress by the bed alongside which Shane had been kneeling. These are the items which defendant says were illegally seized.

Defendant relies on the 4th Amendment protection against unreasonable search and

seizure. In considering a similar problem in *State v. Jackson*, 210 N.W.2d 537, 539 (Iowa 1973) we said:

"[W]e start with the premise all searches and seizures must be conducted pursuant to a search warrant issued on probable cause unless circumstances are shown to excuse compliance with that constitutional restriction. *State v. King*, 191 N.W.2d 650, 654 (Iowa 1971) and citations; *Coolidge v. New Hampshire*, 403 U.S. 443, 452, 454, 91 S.Ct. 2022, 2031, 2032, 29 L.Ed.2d 564, 575, 576 (1971); *McDonald v. United States*, 335 U.S. 451, 452, 69 S.Ct. 191, 192, 93 L.Ed. 153, 157 (1948).

"There are three exceptions to this rule generally recognized by the courts. No warrant is necessary when the search and seizure, within prescribed limits, are incident to a lawful arrest; the warrant requirement may be waived by an informed and voluntary consent; and, third, existence of exigent circumstances may relieve an officer from the obligation to obtain a warrant if it is impracticable to do so."

■ Since the search in question was made without a warrant, it can be upheld, if at all, only on one of these recognized exceptions. We believe this search and seizure were incidental to a valid arrest.

■ This involves two questions. First, we must determine if there was a valid arrest. Second, assuming a valid arrest, we must determine if the search was incidental to the arrest and whether it was reasonable both as to the area covered and the time within which it was made.

We treat first the validity of the arrest.

When the officers went to the motel, they had an arrest warrant for Raymond Smith. They were in the process of making a legal arrest as far as Smith was concerned when they made their entry into the motel room.

The search and seizure objected to by defendant could be justified as incidental to Smith's arrest and would not depend on the validity of defendant's arrest at all.

■ We could summarily dispose of this appeal on that basis. Defendant is seeking the exclusion of evidence seized as a result of a search incident to Raymond Smith's arrest. Smith does not challenge the search. Defendant has no standing to do so. *United States v. Bell*, 457 F.2d 1231, 1239 (5th Cir. 1972); *State v. Dixon*, 241 N.W.2d 21, 23 (Iowa 1976); *State v. Osborn*, 200 N.W.2d 798, 805 (Iowa 1972).

However, that issue seems to have been ignored by both the State and the defendant. We have elected to consider the matter here as it was presented by the parties—the validity of the seizure solely related to defendant's arrest and the subsequent search.

■ We hold there was no violation of defendant's 4th Amendment rights. A valid arrest may be made without a warrant when an officer has probable cause to believe a crime has been committed and that defendant committed it. Probable cause consists of circumstances which would lead a reasonable person to believe defendant committed the crime. *State v. Evans*, 193 N.W.2d 515, 517 (Iowa 1972); *State v. King*, 191 N.W.2d 650, 654 (Iowa 1971).

In *Evans* we quoted the following from *Draper v. United States*, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed.2d 327, 332:

"In dealing with probable cause, * * * as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. * * * Probable cause exists where 'the facts and circumstances within their [the arresting officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed.' * * * "

This same test of probable cause for arrest without a warrant was approved in *State v. Morris*, 227 N.W.2d 150, 152 (Iowa 1975).

■ The officers had the following information when they arrested defendant. The

Hollendale Grocery Store had been robbed by two armed men, one of whom was Raymond Smith. Miss York, with whom Smith and Shane both lived, told them the two men they wanted were at the motel in Marion, Iowa. On approaching the motel room, the officers noticed someone peering furtively out the window. The lights were then immediately extinguished. Repeated demands for entry were refused, even though the men identified themselves as officers and announced they had a warrant for Smith. There was loud noise from within the room, which the officers thought indicated an attempt to escape.

When the officers were finally admitted, defendant was kneeling beside one of the beds and appeared to be putting something underneath the mattress.

We have detailed the events leading up to the arrest without mentioning Mr. Welch's identification of defendant as one of the robbery team. We have done so because defendant argues this identification is of no significance as the arrest was actually made a few seconds before Welch pointed defendant out. In these matters we have refused to make stopwatch computations. *State v. Johnson*, 232 N.W.2d 477, 479 (Iowa 1975). We reiterate that policy here.

While we believe there was probable cause to arrest defendant even without Welch's identification, that additional factor is entitled to consideration. It removes all doubt as to the existence of probable cause for defendant's arrest.

We come now to the search itself. Defendant argues it was invalid because it was made after he was handcuffed and when there was no danger to the officers, no opportunity to destroy evidence, and no possibility he could obtain the means of escape.

Defendant's argument runs like this. The officers might have been justified in searching the area within defendant's immediate control if they had done so before handcuffing him. But they could not do so afterwards because he then had no access to or control over *any* area.

Defendant also claims the search was fatally bad because it was not made until after he was removed from the room and placed in the squad car. Without deciding what, if any, effect that would have, we note the record does not bear this out. Officer Fuller testified the search was made after Smith had been taken to the patrol car but while Shane was still in the room.

■ To come within the exception a search claimed to be incident to a valid arrest must be substantially contemporaneous with the arrest.

In *Chimel v. California*, 395 U.S. 752, 762, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969), the Supreme Court said:

"When an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapon that the latter might seek to use in order to resist arrest or effect his escape. Otherwise, the officer's safety might well be endangered, and the arrest itself frustrated. In addition, it is entirely reasonable for the arresting officer to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction. And the area into which an arrestee might reach in order to grab a weapon or evidentiary items must, of course, be governed by a like rule. A gun on a table or in a drawer in front of one who is arrested can be as dangerous to the arresting officer as one concealed in the clothing of the person arrested. There is ample justification, therefore, for a search of the arrestee's person and the area 'within his immediate control'—construing that phrase to mean the area from within which he might gain possession of a weapon or destructible evidence."

*See also Preston v. United States*, 376 U.S. 364, 84 S.Ct. 881, 11 L.Ed.2d 777 (1964); *Stoner v. California*, 376 U.S. 483, 84 S.Ct. 889, 11 L.Ed.2d 856 (1964).

We have held the ultimate test of search and seizure cases is reasonableness. In *State v. Davis*, 228 N.W.2d 67, 70 (Iowa 1975) we held:

"The first overview courts employ to determine whether a search and seizure is unreasonable is whether the thing done, in the sum of its form, scope, nature, incidents and effect, impresses as being fundamentally unfair or unreasonable in the specific situation when the immediate end sought is considered against the private right affected. Citations. The problems which arise, * * *, in no small measure result from attempts by appellate courts to distill the above concept in the specific rules which will stand the test of rationale applicability in the diverse situations faced by law enforcement officers and trial courts."

*See also Cady v. Dombrowski*, 413 U.S. 433, 93 S.Ct. 2523, 37 L.Ed.2d 706 (1973); *State v. Valde*, 225 N.W.2d 313, 316 (Iowa 1975).

 Tested by that norm, the search and seizure in this case were reasonable and are not subject to constitutional complaint. It would be impractical and unrealistic to say the purposes for which an arrest-related search may be made can be satisfied only if the officer first exposes himself to the very dangers he is supposed to guard against. There is no rule which demands the suspect be given a sporting chance to get to destructible evidence or deadly weapons before the officer is able to find them. We hold the police may see to the safe custody and security of suspects first and then make the limited search which the circumstances of the particular case permit.

There are numerous cases involving challenges to searches made incident to arrest on grounds the search was extended to places remote from where the arrest occurred or because there was an unreasonable time lapse between the arrest and the search. *See* Annot. 19 A.L.R.3d 727 (1968). This is not such a case. The search in the present case was confined to the small motel room where the arrest occurred, and it took place within a minute or two after the arrest. Such searches have been upheld in a number of other jurisdictions, including *United States v. Mehciz*, 437 F.2d 145, 147–148 (9th Cir. 1971); *People v. Fitzpatrick*, 32 N.Y.2d 499, 346 N.Y.S.2d 793, 300 N.E.2d

139, 143 (1973); *State v. Cox*, 294 Minn. 252, 200 N.W.2d 305, 309 (1972); *People v. Perry*, 47 Ill.2d 402, 266 N.E.2d 330, 331–333 (1971).

The search and seizure in the present case were substantially contemporaneous with defendant's arrest, were directly related thereto, and were reasonable and proper. We hold the trial court properly overruled the motion to suppress.

AFFIRMED.