STATE of Iowa, Appellee,

v.

Jerome STRONG, Appellant.

No. 91–1674.

Supreme Court of Iowa.

Dec. 23, 1992.

Lylea Dodson Critelli of Nick Critelli Associates, P.C., Des Moines, for appellant.

Bonnie J. Campbell, Atty. Gen., Bridget A. Chambers, Asst. Atty. Gen., John P. Sarcone, County Atty., and Gregory D. Brandt, Asst. County Atty., for appellee.

Considered by McGIVERIN, C.J., and LARSON, SCHULTZ, LAVORATO, and ANDREASEN, JJ.

ANDREASEN, Justice.

Defendant appeals his conviction for possession of cocaine in violation of Iowa Code section 204.401(3) (1989). Defendant contends the district court erred in denying his motion to suppress evidence obtained pursuant to an alleged unreasonable search and seizure. The defendant, in part, urges the court's ruling is an unwarranted departure from the dictates of *Rochin v. California*, 342 U.S. 165, 72 S.Ct. 205, 96 L.Ed. 183 (1952).

## I. *Background.*

The facts of this case are not contested; the parties stipulated to the operative facts for the purposes of Strong's motion to suppress. On September 15, 1990, a fight occurred in Des Moines. Witnesses to the fight informed Des Moines police officers that Jerome Strong was armed with a semi-automatic pistol. Later, when officers approached Strong, he placed some small objects into his mouth and fled. The officers gave chase and apprehended Strong. The defendant then began to swallow the objects. The officers were able to see several small pieces of a rock-like substance in Strong's mouth which appeared to be crack cocaine. The officers instructed Strong to spit out the contents of his mouth, he refused and continued to try and swallow the objects. The officers attempted, unsuccessfully, to remove the objects from his mouth. Strong, after swallowing the objects, admitted to the officers that he had swallowed crack cocaine. The officers then took Strong to Broadlawns Hospital and requested that medical personnel pump his stomach. Strong's stomach was pumped and the crack cocaine recovered. The search and seizure were conducted without a warrant.

Strong filed a pretrial motion to suppress the evidence recovered from his stomach. The district court denied his motion and the evidence was received at trial. At trial Strong waived his right to a jury and stipulated to the facts contained in the minutes of testimony. Strong was found guilty by the court.

## II. *Scope of Review.*

Where there is an alleged denial of a defendant's constitutional rights, our review of a district court's suppression ruling is de novo. *State v. Bumpus*, 459 N.W.2d 619, 622 (Iowa 1990). We make "an independent evaluation of the totality of the circumstances as shown by the entire record including the evidence introduced at trial as well as that adduced at the hearing on the motion." *State v. Vincik*, 436 N.W.2d 350, 353 (Iowa 1989) (citations omitted). Although Strong asserts constitutional violations of both the United States and Iowa search and seizure clauses, "the language of those clauses is substantially identical and we have consistently interpreted the scope and purpose of article I, section 8, of the Iowa Constitution

to track with federal interpretations of the Fourth Amendment." *State v. Showalter*, 427 N.W.2d 166, 168 (Iowa 1988).

■ Strong asserts the district court erred in completely ignoring the Supreme Court decision in *Rochin*, which he maintains is controlling and requires that the evidence seized during the warrantless stomach pump be suppressed. We disagree. In the present case, Strong alleges the warrantless pumping of his stomach violated constitutional prohibitions against unreasonable searches and seizures. *Rochin*, however, was decided under the due process clause. *Rochin*, 342 U.S. at 173–74, 72 S.Ct. at 210, 96 L.Ed. at 190–91 (the brutal course of proceedings, akin to a coerced confession, resulted in a conviction obtained by methods that offended the due process clause). We conclude *Rochin* is not controlling in this case and now proceed to examine the warrantless search and seizure under the appropriate test.

III. *Warrantless Search and Seizure.*

■ The Fourth Amendment protects individuals from *unreasonable* searches and seizures. Warrantless searches and seizures are by definition invalid unless they fall under one of the jealously and carefully drawn exceptions to constitutional warrant requirements. *See Katz v. United States*, 389 U.S. 347, 357, 88 S.Ct. 507, 514, 19 L.Ed.2d 576, 585 (1967); *Vincik*, 436 N.W.2d at 353. Here, two recognized exceptions are relevant; search and seizure incident to a lawful arrest and probable cause coupled with exigent circumstances. *See Chimel v. California*, 395 U.S. 752, 763, 89 S.Ct. 2034, 2040, 23 L.Ed.2d 685, 694 (1969) (when an arrest is made it is reasonable for the arresting officer "to search for and seize any evidence on the arrestee's person in order to prevent its concealment or destruction"); *Michigan v. Tyler*, 436 U.S. 499, 509, 98 S.Ct. 1942, 1949, 56 L.Ed.2d 486, 498 (1978) (warrantless entry by officers may be legal when there is a compelling need for official action and no time to secure a warrant); *Ker v. California*, 374 U.S. 23, 39–40, 83 S.Ct. 1623, 1632–33, 10 L.Ed.2d 726, 741–42 (1963) (exigent circumstances exist when the police have an objective and reasonable fear that evidence is about to be destroyed); *State v. Harris*, 490 N.W.2d 561, 562–63 (Iowa 1992); *State v. Garcia*, 461 N.W.2d 460, 462–63 (Iowa 1990); *State v. Emerson*, 375 N.W.2d 256, 258 (Iowa 1985). The State must prove the legality of the search and seizure by a preponderance of the evidence. *Bumpus*, 459 N.W.2d at 622.

■ It is clear the officers had probable cause to stop Strong and then arrest him.

Probable cause exists if the totality of the circumstances as viewed by a reasonable and prudent person would lead that person to believe that a crime has been or is being committed and that the arrestee committed or is committing it.

*Id.* at 624; *see Harris*, 490 N.W.2d at 563. The officers possessed information that Strong had been involved in a fight earlier that evening and was in possession of a semi-automatic pistol. When the officers approached Strong they observed him place several small, white rock-like objects in his mouth. The officers had a reasonable and articulable suspicion which would justify an investigatory stop. *See Terry v. Ohio*, 392 U.S. 1, 19, 88 S.Ct. 1868, 1878, 20 L.Ed.2d 889, 904–05 (1968); *Garcia*, 461 N.W.2d at 463. Strong, upon the officers' approach, took flight. *See Bumpus*, 459 N.W.2d at 625 ("While flight alone does not give rise to probable cause, it may, when coupled with a preexisting reasonable suspicion 'elevate the preexisting suspicion up to the requisite Fourth Amendment level of probable cause.' "). The officers gave chase and apprehended Strong. Once apprehended, the officers again observed Strong trying to swallow what appeared to be crack cocaine. Finally, Strong himself admitted that he had just swallowed crack cocaine. At this point, the officers had, without question, probable cause to arrest Strong and they did lawfully arrest him.

■ Exigent circumstances were also present which, when coupled with the existing probable cause, could relieve the warrant requirement. The officers might reasonably have believed they were "confront-

ed with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence.' " *Schmerber v. State of California*, 384 U.S. 757, 770, 86 S.Ct. 1826, 1835, 16 L.Ed.2d 908, 919–20 (1966); *see State v. Jackson*, 210 N.W.2d 537, 540 (Iowa 1973) (Exigent circumstances which may "justify a search and seizure without a warrant usually include ... the probability that, unless taken on the spot, evidence will be concealed or destroyed."). It is common knowledge that the body functions to eliminate substances which are ingested. The most readily accessible illustration of this is alcohol. Shortly after a person stops drinking, the percent of alcohol in the blood begins to diminish. *See Schmerber*, 384 U.S. at 770, 86 S.Ct. at 1836, 16 L.Ed.2d at 920; *State v. Findlay*, 259 Iowa 733, 743, 145 N.W.2d 650, 656 (1966). Likewise, it is common knowledge that cocaine, once ingested orally, is absorbed into the blood and, like alcohol, is eliminated by the body. Therefore, the passage of time alone will operate to destroy the evidence. We conclude, under the rationale of *Schmerber*, that exigent circumstances existed here which justified a warrantless search.

Such a conclusion, however, does not end our analysis. When the warrantless search involves an intrusion into the body, a more demanding test must be met. *See* Wayne R. LaFave, *Search and Seizure* 2d ed., §§ 5.3(c), 501 (1987). We must be satisfied that the method chosen to search Strong's stomach contents was reasonable. Strong contends that under the Supreme Court decision of *Winston v. Lee*, 470 U.S. 753, 105 S.Ct. 1611, 84 L.Ed.2d 662 (1985), the search was not reasonable.

In *Winston*, the Supreme Court was faced with whether a compelled surgical intrusion into an individual's body for evidence was reasonable. "The reasonableness of surgical intrusions beneath the skin depends on a case-by-case approach, in which the individual's interests in privacy and security are weighed against society's interests in conducting the procedure." *Id.* at 760, 105 S.Ct. at 1616, 84 L.Ed.2d at 669. The Court employed a balancing test like that in *Schmerber*. *Id.*

A crucial factor in analyzing the magnitude of the intrusion is the extent to which the procedure may threaten the safety or health of the individual. *Schmerber*, 384 U.S. at 771–72, 86 S.Ct. at 1836, 16 L.Ed.2d at 920; *see Winston*, 470 U.S. at 761, 105 S.Ct. at 1617, 84 L.Ed.2d at 669. Weighing in the analysis is whether "all reasonable medical precautions were taken and no unusual or untested procedures were employed...." *Winston*, 470 U.S. at 761, 105 S.Ct. at 1617, 84 L.Ed.2d at 669. Here, like in *Schmerber*, the procedure was performed by a physician in a hospital environment according to accepted medical practices. *See Schmerber*, 384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920; *Findlay*, 259 Iowa at 739, 145 N.W.2d at 654. Also, there is no indication the procedure utilized here endangered Strong's life or health. *See Winston*, 470 U.S. at 761, 105 S.Ct. at 1617, 84 L.Ed.2d at 669; *Schmerber*, 384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920.

Another factor to be considered is the extent of intrusion upon the individual's dignitary interests in personal privacy and bodily integrity. *Schmerber*, 384 U.S. at 770–71, 86 S.Ct. at 1835–36, 16 L.Ed.2d at 919–20. After noting blood tests were "commonplace in these days of periodic physical examinations," the Court recognized blood tests do not unduly impose on an individual's personal privacy and bodily integrity. *Id.* at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920; *see Winston*, 470 U.S. at 762, 105 S.Ct. at 1617, 84 L.Ed.2d at 670. In *Breithaupt v. Abram*, 352 U.S. 432, 77 S.Ct. 408, 1 L.Ed.2d 448 (1957), Chief Justice Warren stated stomach pumping, like blood testing, is a common and accepted method of testing which normally does not cause any lasting ill effects. *Id.* at 442, 77 S.Ct. at 413, 1 L.Ed.2d at 454 (Warren, C.J., dissenting). We conclude under the facts of this case, the procedure employed did not constitute an unduly extensive imposition on Strong's personal privacy and bodily integrity.

We next weigh the community's interest in fairly and accurately determining guilt or innocence. *See Winston*, 470 U.S. at

**838**

762, 105 S.Ct. at 1617–18, 84 L.Ed.2d at 670. As the Court noted in *Schmerber,* a blood test is "a highly effective means of determining the degree to which a person is under the influence of alcohol." 384 U.S. at 771, 86 S.Ct. at 1836, 16 L.Ed.2d at 920. Likewise, pumping an individual's stomach is clearly a highly effective means of determining whether cocaine is present in that person's stomach. Moreover, in *Schmerber,* there was a clear indication that, in fact, desired evidence would be found if the blood test was undertaken. *Id.* at 770, 86 S.Ct. at 1835, 16 L.Ed.2d at 919; *see Winston,* 470 U.S. at 761, 105 S.Ct. at 1617, 84 L.Ed.2d at 669. Here, the officers' observations coupled with Strong's admission that he had just swallowed cocaine, gave a clear indication that, in fact, the desired evidence would be found.

In *Schmerber,* the Supreme Court concluded the State's interest was sufficient to justify the intrusion, and the compelled blood test was reasonable for Fourth Amendment purposes. *Schmerber,* 384 U.S. at 772, 86 S.Ct. at 1836, 16 L.Ed.2d at 920. In *Winston,* however, the Court concluded the commonwealth failed to demonstrate that it would be reasonable under the terms of the Fourth Amendment to search for noncrucial evidence of a crime by means of the contemplated surgery. *Winston,* 470 U.S. at 766, 105 S.Ct. at 1620, 84 L.Ed.2d at 672–73.

We believe the district court reached the correct result. First, there was plainly probable cause to arrest Strong. Second, the method, pumping Strong's stomach, was reasonable; there was no threat to his health or safety posed by the procedure, the procedure involved virtually no lasting trauma or pain, and the procedure was conducted in a hospital by medical personnel according to accepted medical practices. In addition, the intrusion on Strong's privacy interest entailed by the procedure is more closely akin to the blood test in *Schmerber* than the surgery in *Winston.* Third, it was a virtual certainty that this search would yield the desired evidence. Fourth, there were exigent circumstances which made it probable that, unless Strong's stomach was pumped at that time, the evidence would be destroyed.

Finally, it should be noted that the circumstances which led to the pumping of Strong's stomach were initiated by Strong himself, who, caught in possession of cocaine, attempted to destroy the evidence of his crime by swallowing it. "There is no constitutional right to destroy evidence. While physical evidence may not be 'tortured' from a suspect's lips, the mouth is not 'a sacred orifice into which contraband may be placed and thereafter disposed of in leisurely fashion.'" *People v. Jones,* 20 Cal.App.3d 201, 206, 97 Cal.Rptr. 492, 495 (1971) (citation omitted).

We believe the present record shows no violation of Strong's rights under the Fourth Amendment. Accordingly, the decision of the district court is affirmed.

AFFIRMED.